UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**SEBRENA Y. TUCKER,**

       **Plaintiff,**

**v.**                                    **Civil Action No. 4:12CV69-AWA**

**U.S. BANK, NATIONAL
ASSOCIATION, AS TRUSTEE FOR
THE STRUCTURED ASSET SECURITIES
CORP. MORTGAGE PASS-THROUGH
CERTIFICATES, 2006-EQI, et al.,**

       **Defendants.**

MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

       Sebrena Y. Tucker, by counsel, opposes the Defendants' Motion to Dismiss. Plaintiff has

alleged that the Defendants U.S. Bank and American Servicing Company ("ASC") breached the

implied covenant of good faith and fair dealing implied into every Virginia contract, including the

Deed of Trust and Note pursuant to this court's decisions in *Acuna v. Chase Home Finance, LLC*,

3:10CV905, 2011 WL 1883089 (E.D.Va. May 17, 2011) and *DesOgugua v. Wells Fargo, et al.*,

1:11CV188 (E.D.Va. Sept. 14, 2011); that Defendants violated the Equal Credit Opportunity Act

("ECOA"), 15 U.S.C. § 1691(d) and the Virginia Equal Credit Opportunity Act ("VECOA") Va. Code

Ann. § 6.2-501 (formerly codified at §59.1-21.21:1); and that Defendants never responded to a single

Qualified Written Request as it is required to do under the Real Estate Settlement Procedures Act

("RESPA") 12 U.S.C.§ 2605(e).

       These causes of action are all pled with factual specificity sufficient to survive a motion to

dismiss.  The Defendant knows this, but has filed its motion to dismiss anyway, burdening the court

and requiring unnecessary litigation.

## Overview

Whether Plaintiff ultimately prevails in her legal claims in this case – the Court and the Jury have a say in the outcome – no one (even the Defendants) can deny that the equities are overwhelmingly in her favor.   Ms. Tucker recognizes that this case and this Court are properly bound by the law to determine whether Defendants' conduct was legally wrong. There should be no doubt that Defendants' conduct was actually repugnant.  Recall the facts in this case:  Plaintiff was not behind on her mortgage in November of 2009 when she was contacted by ASC with an offer that she could apply for a loan modification.  (Compl. ¶¶ 9-10).  She was contacted by ASC, which offered her what it claimed was a simple loan modification, but that she should stop making her monthly mortgage payment in order to qualify.  (Compl. ¶¶ 10-11).  She completed the loan modification application by signing and submitting all the paperwork that ASC requested – countless times in fact, after ASC repeatedly lost documents that she supplied as part of her completed application.  (Compl. ¶¶ 10-11; 16-22).  She was informed that she was granted a reduced payment schedule and made the payment amounts exactly as ASC then instructed. (Compl. ¶¶ 12-14; 16, 18).

Instead of applying the Plaintiff's monthly payments to her mortgage, ASC did not credit any of Ms. Tucker's payments and instead placed all her payments into an escrow account.  (Compl. ¶¶ 14-27).  Then, approximately six months later in June of 2010, ASC and U.S. Bank reversed its course and wrote Plaintiff advising that it was not going to perform under its loan modification and that it was kicking her out of the program because it alleged that she had not provided the documentation that she had, of course, provided many times over.  (Compl. ¶ 20).  She was now considered by ASC and U.S. Bank to be behind on her loan because she had paid the lowered payment amounts as she had been instructed in writing.  That very month, U.S. Bank and ASC even initiated foreclosure against the Plaintiff, which foreclosure was stopped.   (Compl. ¶ 24).  Plaintiff has honestly pled scores of communications from and with Defendants and others that chronicle her three-year struggle.  It is on par with some of the worst mortgage cases in which Plaintiff's counsel has ever been involved.

The removed Complaint is detailed and more than sufficient to survive this entry threshold to litigation. Notably, the Defendants cannot even deny that the facts pled demonstrate that the Plaintiff did everything she was supposed to do and everything Defendants told her to do. Defendants will never be able to deny that Plaintiff's allegations demonstrate that what they did was objectively wrong. The question presented for ultimate resolution by the court is the nature and extent of the remedies to which Ms. Tucker is entitled. The Plaintiff has painstakingly conformed her Complaint to this court's rulings, as well as the facts and law that have emerged over the course of three years that Ms. Tucker has been battling Defendants for her home. This is not an action to enforce any aspect of the Home Affordable Mortgage Program. This is an action under the laws of the United States and Virginia that entitle her to well-established remedies against the Defendants for their objectively illegal acts.

## Procedural History

Ms. Tucker filed her original complaint and jury demand in the Circuit Court for the City of Hampton, Virginia, on April 13, 2012, (Docket #1-2), which was removed by the Defendants to this court on May 8, 2012. Instead of filing an Answer, the Defendant filed a Motion to Dismiss on the same day it removed the case (Docket #2). The Plaintiff alleged breach of the implied covenant of good faith and fair dealing after carefully considering this court's decisions in *Acuna, Bourdelais* and *DesOgugua*, because the facts underlying the claims in those cases are very similar to the facts that give rise to Ms. Tucker's claims.

## Standard of Review

The Defendants have asserted that the Plaintiff has failed to adequately allege particular facts that entitle her to relief. (Def.'s Mem. at 2)(Docket #3). In order for the Defendants to prevail in its motion, it must demonstrate that the Plaintiff has supplied no facts which, taken as true, facially state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007). While Fed. R. Civ. P. 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief," the statement must contain "'more than an unadorned, the-defendant-unlawfully-

harmed-me accusation.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Twombly,* 550 U.S. at 555)(internal citation omitted). In order to determine whether the Defendants prevail, it must overcome the considerable hurdle in "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Sumner v. Tucker,* 9 F.Supp.2d 641, 642 (E.D.Va.1998). The Rule requires that the facts alleged by the Plaintiff are presumed to be true and the complaint should be dismissed only when "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *White v. Jones,* No. 1:10CV799, 2010 WL 3395695, at *2 (E.D. Va. Aug. 23, 2010) *aff'd,* No. 10-7283, 2010 WL 5439712 (4th Cir. Dec. 29, 2010)(quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## I.    Complaint Allegations

The Plaintiff has filed a fact-intensive Complaint, above and beyond that which is required by Fed. R. Civ. P. 8, not only stating her claims but also putting the Defendants fully on notice of the allegations against it.  In support of its Motion to Dismiss, the Defendants simply ignore and rewrite the allegations and the law in order to argue that the Complaint fails to allege facts sufficient to entitle her to relief.  (Def.'s Mem. in Supp. of Motion to Dismiss)(Def.'s Mem.)(Docket #3).  The Complaint in this case fully complies with Fed. R. Civ. P. 8, with 68 paragraphs detailing facts that entitle the Plaintiff to relief.

This case arises out of a home mortgage where the Complaint alleges that Ms. Tucker was a borrower who was minding her own business when Defendants sought her out to apply for a loan modification, meanwhile deceiving her about the requirements for the modification in order to cause her to miss her monthly mortgage payments. This court has held that there is no private right of action to enforce HAMP to obtain a loan modification, even when a consumer has fully performed under a Trial Period Plan ("TPP") and a loan modification is an express term of that agreement.  *Bourdelais v.*

*JPMorgan Chase Bank, N.A.*, Civil No. 3:10CV670, 2011 WL 130631, at *5 (E.D.Va. April 1, 2011). The Plaintiff is not alleging a violation of HAMP and not challenging that law now.  However, just because there is not a private right to enforce a loan modification under HAMP, the Defendants are not granted free license to trample on all of the Plaintiff's existing legal rights because of it.  *Acuna*, 2011 WL 1883089, at * 6; *accord Allen v. CitiMortgage*, No. CCB-10-2740, 2011 WL 342665, at *5(D. Md. Aug. 4, 2011).  And Plaintiff is certainly not barred from all relief based on this court's holding that there is no private right of action to enforce HAMP.  *Id*.  That HAMP is even involved is beside the point, especially where Plaintiff states a claim that conforms to the decisions from this court, even where the facts happen to involve a HAMP application but the legal theory is entirely dependent on the reprehensible and illegal actions by the Defendants. *Acuna*, 2011 WL 1883089, at * 6.

   The Defendants induced Ms. Tucker into applying for a HAMP loan modification in order to drive her into default and foreclose on her home by falsely stating that she had to be in default on her mortgage in order to qualify. (Compl. ¶ 10-11). Any failure to comply with the "Notice of Grievance" term in the Deed of Trust does not bar the Plaintiff's claims, as the Supreme Court of Virginia held in *Mathews v. PHH Mortgage Corporation* and more specifically in *Schmidt v. Wells Fargo Home Mortgage*, Civ. No. 11-059, 2011 WL 1597658 *3 (E.D. Va. April 26, 2011).

   With respect to the ECOA and VECOA, it is laughable that the Defendants state that the Plaintiff did not allege an adverse action related to her completed application for consumer credit in the form of a loan modification. (Defs' Mem. at 8).  The Plaintiff alleged that she completed an application for a loan modification, but instead of a modification, Defendants refused to accept her mortgage payments, failed to inform her the modification was denied, initiated foreclosure, kicked her out of the modification program, offered loan forbearances styled as "modifications" with substantially different and less favorable terms than that for which she applied, then belatedly sent a non-compliant denial letter more than a year and a half after first submitting her complete application.  (Compl. ¶¶ 21-30; 31).

With respect to the RESPA claim, the Defendants completely ignore the allegations of the Complaint establishing the facts necessary to establish the violation where the Plaintiff alleges that a Defendant failed to respond to a single QWR.  The Plaintiff adequately alleged that she made qualified written requests to which the Defendant never responded and never conducted an appropriate investigation.  (Compl. ¶¶ 63-64). The relevant facts alleged in the Complaint are plentiful, specific and demonstrate the Plaintiff is entitled to relief. The Plaintiff recites the allegations here, for purposes of this motion, to demonstrate clearly the Defendants' mischief in filing its Motion to Dismiss and characterizing the Plaintiff's facts as inadequate:

      **(i)**     **Count I**

With respect to the Claim for the Breach of the Implied Covenant of Good Faith and Fair Dealing, the Complaint alleges (paragraph numbering is the same as in the original):

The Plaintiff was current on her mortgage payments (Compl. ¶ 9) when the Defendants solicited her to apply for a loan modification to reduce the principle and interest on her mortgage (Compl. ¶ 10) and falsely telling her that she had to miss her scheduled mortgage payments while the application was being processed (Compl ¶ 10).  ASC falsely informed Plaintiff that in order to qualify for a loan modification, she had to be behind on her payments or in actual default.  (Compl. ¶ 11). Defendants instructed Plaintiff to make a reduced payment each month in January, February and March of 2010, which she made and continued to make long after the trial period.  (Compl. ¶¶ 12, 18, 19).  ASC did not apply a single payment it received from the Plaintiff to reduce the principal balance on the loan, but instead put all her payments into an escrow account and, thus, considered her to be in serious arrears.  (Compl. ¶¶14-15).   Defendants without warning stopped accepting Plaintiff's payment in June of 2010, kicked her out of the program and moved to foreclose.  (Compl. ¶¶ 20-21; 23).  The Defendants then improperly added unlawful late fees and other charges to Plaintiff's account and refused to properly calculate the true amount due and owing on her loan.  (Compl. ¶¶ 25, 29-30, 32-33).

The Plaintiff has alleged that she is a party to a Deed of Trust securing the property. (Compl. ¶ 6, 10-11).  Among other things, the Complaint adequately alleges that the Defendants breached the covenant of good faith and fair dealing implied in every Virginia contract by falsely informing her that she had to be in default or behind on her payments to apply for a modification, when that was untrue; inducing her into a trial period plan without disclosing to her it would immediately put her payments into an escrow account and consider her to be in default so it could foreclose; lying to the Plaintiff by stating that the application was complete, then either failing to safeguard the Plaintiff's documents and application or simply lying to her that the application was, in fact, incomplete.  (Compl. ¶¶ 48-49). The Defendants never intended to offer a loan modification under HAMP, but instead sought to plunge the Plaintiff into default in order to rack up fees and charges, seek foreclosure, and/or induce the Plaintiff to enter far less favorable versions of forbearance agreements rather than the loan modification it had promised.  (Compl. ¶¶ 47-51).

**(ii)      Count Two**

U.S. Bank purports to be the owner and holder of the Plaintiff's note and trustee of the securitized trust of which the Plaintiff's mortgage is but one asset, and ASC is the servicer of Plaintiff's loan.  (Compl. ¶¶ 2-3; 10-11).  ASC induced Plaintiff into applying for a loan modification that would reduce principal and interest on her current loan.  (Compl. ¶¶ 10-11).  Plaintiff completed the application for a loan modification, after which time she stopped making her payments as instructed by Defendants while her loan application was being processed.  Id.  She was not sent a denial letter or otherwise informed that her application was denied, but instead the Defendants "kicked Plaintiff out of the loan modification process," returned the Plaintiff's monthly mortgage payment to her, and initiated foreclosure.   (Compl. ¶¶ 20-23).  Subsequently, Defendants offered several loan options that it tried to pass off as loan modifications, but were in fact forbearance loans that tacked on illegal fees, charges, and arrearages.  (Compl. ¶¶ 20, 25-30).  After more than a year and a half, the Defendant finally sent a denial letter to the Plaintiff that her application was denied.  (Compl. ¶ 31).

### (iii)   Count Three

The Plaintiff alleged that within two years prior to filing this lawsuit, she sent a number of Qualified Written Requests (QWR) to the Defendants insisting it process her loan modification and otherwise to provide information about her loan. (Compl. ¶63). The Defendants did not respond to the Plaintiff's QWRs.   (Compl. ¶ 64(a)-(d)).   Because of Defendants' refusal to respond to any of Plaintiff's QWRS, she suffered damages such as to her reputation, embarrassment, humiliation, and other emotional and mental distress. (Compl. ¶ 65).

### (iv)   Damages

Plaintiff has demonstrated throughout the Complaint and this brief that she is entitled to punitive damages, statutory damages, attorneys fees and costs based in statute and common law. Yet, the Defendant requests that the court strike these demands because "there is no basis for such relief" and because she has not pled that the Defendants actions were "reckless, intentional, or willful." (Defs' Mem. at 11).

The Complaint contains abundant facts that demonstrate not only that Defendants' actions were reckless, but they were intentional efforts to rack up fees and charges, to plunge the Plaintiff into default and foreclosure, that they failed to safeguard the documentation that the Plaintiff repeatedly submitted, that they tried to sell one of its forbearance loans with principal, fees and other charges tacked on, to deprive her of her home, her money, her options and her reputation. (Compl. ¶¶ 52). The Defendants got the Plaintiff to apply for a loan modification and stop paying her monthly mortgage through deceit. (Compl. ¶¶ 10-12; 14-15). Instead of applying her monthly payments to any part of her loan, Defendants held the money in an escrow account, which made it appear that she was not paying anything at all. (Compl. ¶ 14).

### (v)   Injunctive Relief

The Plaintiff seeks the equitable remedies available under the ECOA as well as an injunction to prevent the Defendants from unlawfully foreclosing on the Plaintiff. (Compl. ¶¶ 61 and "Wherefore")

## II.     Law and Argument

### 1.     The Deed of Trust does not bar the Plaintiff's Claims.

Defendants argue that the Plaintiff is barred from bringing her lawsuit because Section 20 of the Deed of Trust provides "[n]either borrower **nor lender** may commence, join, or be joined to any judicial action… that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party… of such alleged breach and afforded the other party hereto a reasonable period after giving of such notice to take corrective action. This argument fails first under a recent Virginia Supreme Court decision that revived borrowers' claims against defendant loan holder and servicer, concluding that the borrowers' non-payment under a home loan did not constitute the first material breach of the loan agreement and, consequently, did not preclude the borrowers from bringing an action to require a lender to comply with the conditions precedent to foreclosure that are contained in a deed of trust. *Mathews v. PHH Mort'g Corp.*, 724 S.E.2d 196 (Va. 2012).

Next, and more specifically, the argument fails because Ms. Tucker's allegations of fact relate to Defendants' conduct as the loan servicer, and not the lender. (Compl. ¶¶ 3; 10-14). This court's recent opinion closely examined this precise issue. In *Schmidt v. Wells Fargo Home Mortgage*, defendant filed a motion to dismiss arguing that plaintiff did not provide any notice in accordance with the deed of trust prior to initiating the action. No. 11-059, 2011 WL 1597658 *3 (E.D. Va. April 26, 2011). The court disagreed, finding "[t]he notice-and-cure provisions in the deeds of trust bind the borrower and the lender, not the borrower and the loan servicer." *Id*. The court also distinguished the *Schmidt* decision from two of its previous decisions relied on by Defendant, noting "*Johnson* involved a dispute between a borrower and a substitute trustee" and "in *Niyaz*, the plaintiff's case also involved the lender entitled to notice, and the court treated the numerous defendants as group." *Johnson v.*

9

*Countrywide Home Loans*, Inc., 2010 WL 5138292 (E.D. Va. Dec. 10, 2010); *Niyaz v. Bank of America*, 2011 WL 62655 (E.D. Va. Jan. 2, 2011).[1]

Assuming, *arguendo*, that the Notice of Grievance provision precludes Ms. Tucker from asserting a claim for breach of the implied covenant of good faith and fair dealing, several recent decisions including *Schmidt*, acknowledge that the notice-and-cure provisions do not extend to claims based on deceptive business practices. *See  Schmidt*, 2011 WL 1597658 *3; *see also Stovall v. SunTrust Mortgage, Inc.,* No. 10-2836, 2011 WL 4402680 (D. Md. 2011) (stating that "[a]s the majority of [plaintiff's] claims involve allegations of deceptive business practices, this Court finds that the notice-and-cure provision in the Deed of Trust does not warrant dismissal of the case.") (citing *Gerber v. First Horizon Loans Corp.*, No. 05-1554P, 2006 WL 581082 *3 (W.D. Wash. Mar. 8, 2006)). Similarly, two of three of the Plaintiff's claims involve allegations of deception in their business practices – including breach of implied covenant of good faith and fair dealing and failure of the Defendants to comply with the adverse action notice provisions of the ECOA and VECOA.

In support of this argument, Defendants rely exclusively on one case decided by this court, which was filed and prosecuted by *pro se* litigants[2] -- *Johnson v. Countrywide Home Loans, Inc.*, 2010 U.S. Dist. LEXIS 131112 (E.D. Va. Dec. 10, 2010). Based on this case alone, and failing to cite the other relevant cases on point from this very court, Defendants argue that the entire case should be dismissed because Plaintiff's Deed of Trust contains an identical provision.

In construction of a contract, "it is well settled that the whole instrument is to be considered, and not one provision only, in determining the meaning of any and all its parts; not the words merely in which the provisions are expressed but ***their object and purpose***, as disclosed by the subject matter, the condition and situation of the parties." *Carpenter v. Gate City*, 185 Va. 734, 740-41 (1946) (emphasis

---

[1] The opinion in *Niyaz* was on summary judgment and not a motion to dismiss, thus a completely different standard of review.

[2] It is important to note that a review of these pleadings reveals that the lawsuits were inadequately pled and failed to state any cause of action.

added). Within this context, the Supreme Court of Virginia has held that, although "the academic definition of words is often important, more important is still the purpose of the covenant." *Id.* (*citing Krikorian v. Dailey*, 171 Va. 16, 24 (1938). In other words, when interpreting a contract, the ends of justice requires a court to look to the underlying purpose the contractual terms are designed to achieve. *See Flippo v. CSC Assocs. III, L.L.C.*, 262 Va. 48,64 (2001).

The principal purpose of a written pre-litigation notice is to put a potential defendant on notice of any potential claims for damages and to give it an opportunity to investigate the situation and take action to eliminate the problems. *See AMEC Civil, L.L.C. v. Commonw. of Virginia*, 74 Va. Cir. 492 (Norfolk 2008); *see also Gerber v. First Horizon Home Loans Corp.*, 2006 U.S. Dist. LEXIS 12225 (W.D. Wash. Mar. 8, 2006) (stating the purpose of the notice provision is "to promote the resolution of contractual disputes without the expense of litigation.").

Defendants' interpretation of the pre-litigation notice is not only inconsistent with the case law of this district, but also the spirit and the purpose of the provision. For instance, such a broad interpretation would require a plaintiff to wait thirty days after *any* foreclosure – no matter how wrongful -- to commence a lawsuit to void the sale. During this thirty-day window, homeowners would often be confronted with unlawful detainer lawsuits by a subsequent purchaser, which can be filed and set for trial *before* the thirty-day window even elapses.

**2.     Ms. Tucker has stated a claim for breach of the implied covenant of good faith and fair dealing.**

In order to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) the existence of a contract; and (2) a breach of the implied covenant. *Enomoto v. Space Adventures, Ltd.*, 624 F.Supp.2d 443, 450-51 (E.D.Va. 2009).  Like the Defendant in *Enomoto*, Defendants get the elements of Virginia law wrong.  *Id.*  In this case, the Plaintiff has alleged the existence of a contract, both the Note and the Deed of Trust. The Plaintiff has also alleged a long litany of facts that this court has held state a claim for a breach of the implied covenant of good faith

and fair dealing. *Acuna*, 2011 WL 1883089.  These allegations are sufficient to state a claim and

withstand dismissal. *Enomoto*, 624 F.Supp.2d at 450-51. The Defendants cite several cases in which

the plaintiffs sought to enforce a loan modification under HAMP, including based on a theory of

breach of the implied covenant of good faith and fair dealing regarding the implementation and

progress of a HAMP application, which is a legal theory that is not relevant to this lawsuit.  (Defs'

Mem. at 6).  The Defendants argue that it had a contractual right to accelerate payment and ultimately

foreclose, and therefore its egregious actions to induce the Plaintiff into applying for a loan

modification, instructing her to miss mortgage payments, to pay a reduced monthly payment while her

application was being considered, all to ultimately foreclose, could not possibly be a breach of the

implied covenant of good faith and fair dealing.

### A. The Plaintiff has pled more than sufficient facts to survive dismissal.

The Defendants acknowledge the actions the Plaintiff has pled that breach the implied

covenant. Despite this court's decisions in *Acuna* and *DesOgugua,* it is firmly established in Virginia

law that a cause of action for breach of the implied covenant of good faith and fair dealing is not an

independent cause of action but must arise out of an existing contract. *Enomoto,* 624 F.Supp.2d at 450.

Such a cause of action has been pled here.  Subsequent to the court's decision in *Acuna*, the plaintiff in

*DesOgugua* survived a motion to dismiss her claim for breach of the implied covenant of good faith

and fair dealing based on very similar facts.  In both cases, the court found that a note or deed of trust

met the "existence of a contract" prong, while the specific acts to plunge borrowers into foreclosure

and wrongfully deprive the plaintiffs of their homes established breach of the implied covenant.

Despite the Defendants distracting argument to the contrary (Defs' Mem. at 6-7), nowhere in

the Complaint is there any allegation or claim that the Plaintiff is seeking to enforce the TPP or HAMP

in order to obtain a loan modification.  That ground has been covered, and both the Plaintiff and the

Defendants know it. *Acuna*, 2011 WL 1883089. Nowhere in the Complaint is there any mention of an

independent cause of action that is not dependent upon the existence of the Deed of Trust. In fact, it is

explicitly to the contrary. The Plaintiff alleges a breach of the covenant of good faith and fair dealing based on the Deed of Trust.  To the extent that Defendants spend any of its brief discussing HAMP and that there is no independent cause of action for breach of the implied covenant of good faith and fair dealing, the Defendants' brief should be completely ignored. (Defs' Mem. at 7).

The Defendants' main argument is that it had a right to foreclose on a person it tricked into default by instructing her to miss payments and make reduced payments.  "…Defendants had the **contractual right** to take all actions alleged in the Complaint." (Defs' Mem. at 7) (emphasis in original)  This is not the law.

First, the factual allegations are extensive and do more than suffice to put the Defendants on notice of the allegations against it under Fed. R. Civ. P. 8.  In particular, paragraph 46 of the Complaint specifically and closely tracks the holding in *Acuna*, 2011 WL 1883089, at *6, detailing the facts that demonstrate Defendants' breach of the duty of good faith and fair dealing with respect to Ms. Tucker by (1) falsely informing her that she had to be in default on her mortgage in order to be considered for a loan modification under HAMP; (2) falsely informing her that since she was current on her mortgage, she would have to miss two payments in order to qualify for HAMP; (3) inducing her into a HAMP loan modification application and Trial Payment Plan without disclosing that it would consider the reduced monthly payment to be a delinquency or default that would place the loan into arrears and would trigger foreclosure; (4) instead of applying the payments made under the TPP to reduce the principal and pay the interest and escrow on her mortgage, Defendants put the payments into an escrow account; (5) despite telling the Plaintiff her application was complete, Defendants kicked her out of the program falsely stating that she had not timely provided required documents and thus her application was incomplete; (6) failing to abide by terms of the Note and Deed of Trust that govern the original loan; (7) failing to follow HAMP guidelines; (8) failing to properly safeguard and maintain important documents provided by Ms. Tucker; (9) initiating foreclosure; (10) after deceiving her into going into what it considered to be default, attempting to get the Plaintiff to agree to a far less

favorable loan forbearance agreement that included illegal fees and charges, as well as an incorrect amount due and owing calculation.

Defendants cite multiple cases in support of their contractual right to accelerate payment and foreclose, none of which has any bearing on the Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. In *Riggs Nat. Bank of Washington, D.C. v. Linch*, 36 F.3d 370 (4th Cir. 1994), the court properly held that a claimed implied duty to implement a contractual option in a manner favorable to a mortgagor did not override or modify explicit contractual terms that allowed for foreclosure. Plaintiff makes no such claim, alleging that Defendants' breach of the implied covenant unlawfully created the Defendants' opportunity to seek foreclosure. Defendants' citation to *Indep. Fed. Sav. Bank v. Briley*, No. 1:08cv1189, 2009 WL 3498110 (E.D. Va. Oct. 27, 2009), is similarly not-on-point because *Briley* concerns claims that implementation of explicit contract terms in a manner that disfavored the mortgagor were a breach of the implied covenant of good faith. *Id*. at 4-5. Plaintiff makes no such claim. The *Briley* court, however, does note that "in every contract there is an implied covenant that <u>neither party shall do anything which will have the effect of destroying or injuring the right of the other party</u> to receive the fruits of the contract." *Id*. at 3 (citing *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988) (emphasis added). This is the essence of the claim made by the Plaintiff, succinctly stated. Utilizing *Va. Vermiculite, Ltd. v. W.R. Grace Co.*, 158 F.3d 535 (4th Cir. 1998) and *Wachovia Bank, N.A. v. Preston Lake Homes, LLC*, 750 F. Supp. 2d 682 (W.D. Va. 2010), Defendants attempt to reframe Plaintiff's claim into a failure to allege that the Defendants exercised some discretionary contractual right in bad faith, such being an exception to strict exercise of contractual rights. Defendants stress the statement in *Wachovia* that "[t]he duty of good faith cannot be extended to compel a party to exercise an option or enter into an entirely new contract." *Id* at 2. Plaintiff agrees and reasserts her claim that Defendants breached the implied covenant of good faith and fair dealing by purposely leading her into a defaulted position regarding her mortgage. Finally, Defendants try to invert Plaintiff's claim to suit the facts of *Washington v. CitiMortgage, Inc.*, No. 3:10cv887, 2011 WL

1871228 (E.D. Va. May 16, 2011). *Washington's* claim was that a violation of the implied covenant of good faith and fair dealing occurred when explicit contract terms were implemented. *Id.* at 9. Plaintiff's claim is that the covenant was breached when Defendants made false assertions and promises to her.

### B. The legal standard for breach of the implied covenant does not require a breach of a specific term of the underlying contract.

The facts could not be more clear, but Defendants argue that despite the clarity of these facts, that it is entitled to take all the actions that it has taken pursuant to the Deed of Trust. Unbelievably, Defendants argue that Plaintiff "fails to allege a single fact that would put the Defendants on notice as to how they have breached any discretionary right that rises to the level of a breach of the implied covenant of good faith and fair dealing." (Defs' Mem. at 7). As already stated, such a claim is not part of Plaintiff's claim. Defendants also get the law wrong, arguing that the Plaintiff must demonstrate a specific failure to perform under the Note or Deed of Trust. Such allegations would be breach of the actual contract, which is not required for a breach of the implied covenant. *Enomoto*, 624 F.Supp.2d at 450-451. This court explained

> In Virginia, every contract contains an implied covenant of good faith and fair dealing. *Va. Vermiculite, Ltd. v. W.R. Grace & Co.,* 156 F.3d 535, 541-42 (4th Cir.1998); *Penn. Life Ins. Co. v. Bumbrey,* 665 F.Supp. 1190, 1195 (E.D.Va.1987). Defendant argues otherwise, but its assertion is based on an erroneous interpretation of Virginia law. Defendant quotes the Virginia Supreme Court's statement that "in Virginia, when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip., Inc. v. New Holland N. Am.,* 254 Va. 379, 493 S.E.2d 516, 520 (1997). *Ward's,* however, addressed only conduct that Defendant was explicitly authorized to undertake by the contract. *Id.* The same Virginia court also declined to allow a claim for breach of the implied covenant because the plaintiff complained only that the defendant's exercise of rights specifically afforded to it under the contract was arbitrary, but not dishonest. *Charles E. Brauer,* 466 S.E.2d at 386. As noted by the Fourth Circuit, these rulings are not inconsistent with the implied covenant: "in Virginia, as elsewhere, [ ] although the duty of good faith does not prevent a party from exercising its explicit contractual rights, a party may not exercise contractual discretion in bad faith, even when such discretion is vested solely in that party." *Va. Vermiculite,* 156 F.3d at 542 (citations omitted). This claim is properly pled because Plaintiff does not seek redress through an implied covenant claim merely for Defendant's unfavorable exercise of its explicit contractual rights. Plaintiff alleges that Defendant's actions were not merely unfavorable, but actually dishonest. Am. Compl. at ¶¶ 6, 278. He alleges that Defendant purposefully failed to provide him with a space flight and purposefully failed to inform him of

the high likelihood of medical disqualification until after he had paid three or four payments that Defendant submits are non-refundable. *Id.* These are not merely claims for Defendant's unfavorable exercise of its contractual rights. Plaintiff has alleged bad faith and unfair dealing in a contractual relationship. Defendant's motion to dismiss Count II will be denied.

*Id.* Like the plaintiff in *Enomoto*, Ms. Tucker has alleged facts that Defendants actions were not merely unfavorable, but actually dishonest in every way imaginable.

### C. Defendants ignore the well-pled facts of the Complaint and argue that they are entitled to take all the actions it has under the Note and Deed of Trust.

Under Rule 12(b)(6), the Defendant is bound by the factual allegations of the Complaint. Instead of applying the Rule 12(b)(6) standard, Defendants supply its own facts and argues its defenses in contravention of *Ashcroft v. Iqbal,* 556 U.S. at 678.  The Court must accept all well-pled facts as true, and construe the facts in the light most favorable to the Plaintiff where the Defendant is challenging the legal sufficiency of the Complaint.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).  Dismissals are disfavored.  *Fayetteville Invs. v. Comm'n Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).  In this case, the Defendants have not only attacked the sufficiency of the Complaint, but have expressly moved to dismiss on its version of the facts, failed to accurately defer to the allegations contained in the Complaint, and argued non-existent elements it believes are missing from Plaintiff's *prima facie* claims.

Rule 8 simply requires a short plain statement of the facts entitling the Plaintiff to relief, which in this case demonstrate the Defendants took actions that caused the Plaintiff great damages because it acted outside its obligations and rights under the Note and Deed of Trust. It does not have a right under either contract to deceive its customer so that the customer will withhold her monthly mortgage payment, make payments as instructed under a TPP, and otherwise foreclose on a customer it knows was not in default, was not behind, and only became so based on the Defendants' instructions. This court's decision in *Acuna v. Chase Home Finance, LLC,* was based on very similar allegations.  2011 WL 1883089, at *6. The facts and allegations in this case are similar to this court's holding in *Acuna*. *Id.* Since *Acuna* was decided, not only has this court denied a mortgage lender and servicer's motion to

16

dismiss a similar claim in *DesOgugua*, other district courts within the Fourth Circuit and other circuits have found that plaintiffs alleging similar facts stated viable claims for breach of contract despite the fact the plaintiffs were attempting to modify a loan through HAMP.  *See, e.g. Allen v. CitiMortgage, Inc.*, No. CCG-10-2740, 2011 WL 3424665, at *4-*5 (Aug. 4, 2011)(citing cases).

The Defendants argue that there is nothing in the Note or Deed of Trust that entitles the borrower to a loan modification, which is correct. The Plaintiff does not allege that the Defendants do not have rights under the Note and the Deed of Trust; the Plaintiff alleges a breach of the implied covenant based not on a breach of a specific term contained in a contract, but on all the conduct by Defendants that was actually dishonest.  *Enomoto*, 624 F.Supp.2d at 450-451.  Simplified, Plaintiff's claim is that under the governance of the Note and Deed of Trust, Defendants expressly advised the Plaintiff to not pay in a different amount and in fact it would have rejected or applied as overpayment amounts greater than that instructed.  It is the conduct related to those dishonest communications that is derived from the pre-existing contractual relationship between the parties and not (as this Court has itself explained) based upon a HAMP agreement and which conduct abolishes the rights the Defendants may have under the contract where it has acted with such guile.

The Defendants cite several cases that are distinguishable for several reasons. First, in each case the Plaintiffs sought enforcement of HAMP by alleging a breach of the implied covenant, which Ms. Tucker does not do in her Complaint. Defendants rely on a stream of inapposite case law, void of analysis related to the common law causes of action.  Defendants' argument relies on an order from *Pennington v. PNC.*  (Def's Mem. at 6-7).  In *Pennington*, the homeowner moved in state court to enforce a contract amongst the defendants under a third party beneficiary theory.  However, the *Pennington* case is vastly different than this case because Ms. Tucker is not attempting to enforce a contract she is not a party to under a third party beneficiary theory. [3]

---

[3] *Pennington v. PNC Mortgage, et al.*, No. 2:10cv361 (Doumar, J.) (E.D.Va. Aug. 11, 2010), appears procedurally unusual. On July 23, 2010, PNC removed to federal court as a federal question because the Plaintiff alleged HAMP violations. *Id.*

Plaintiff asserts that the Defendants' act of failing to follow HAMP when it was the applicable law and their misrepresentations that they would follow it satisfies some of the elements for the claims such as the breach of the implied covenant of good faith and fair dealing and presents an issue for injunctive relief.   It also provides evidence of willfulness.   While there are necessary references to HAMP, this lawsuit is not an attempt to enforce HAMP.  The difference is not subtle; it is decisive.

Moreover, Virginia law states that a statutory remedy does not preempt common law remedies. *See e.g. Chaffinch v. The Chesapeake & Potomac Tel. Co. of Virginia, Inc.* 227 Va. 68, 72-73, 313 S.E.2d 376-76 (1984) (holding "a statutory remedy does not preempt common law remedies against a non-sovereign entity vested with the power of eminent domain unless the statute, expressly or by necessary implication so provides.").

 Therefore, the denial of a private right of action in a statute does not preclude Plaintiff from enforcing her common law claims.  See, e.g., *Sanders v. UDR, Inc.*, 2010 U.S. Dist. LEXIS 106567, No. 3:10-CV-459 (E.D. Va. Oct. 4, 2010); *Speleos v. BAC Home Loans Servicing, L.P.*, 2010 US Dist. LEXIS 132111 2010 WL 5174510 at *6 (D. Mass. Dec. 14, 2010)(holding that HAMP does not allow for a private right of action but, "[a] claim for negligence based on a statutory or regulatory violation can survive even where there is no private cause of action under that statute or regulation"); *Cruz v. Hacienda Assocs., LLC* (In re Cruz), No. 11-04006, 2011 Bankr. LEXIS 259 **6, 10 (Bankr.D. Mass. Jan. 26, 2011)(agreeing with *Speleos* that a foreclosure sale while a HAMP was pending was a fiduciary breach).

The *Speleos* court noted that even if the modification was denied eight days prior to the scheduled sale, "the plaintiff was not given written notice of the denial nor was he offered other

---

(Docket #1).   On August 10, 2010, PNC filed motions to dismiss.  *Id*. (Docket ##4, 6, 8, 11).  The court dismissed the HAMP claims the very next day without the benefit of briefing from the Plaintiff or allowing time for the Plaintiff to amend the Complaint under Fed. R. Civ. P. 15(a)(1)(B), and remanded the remaining state law claims back to state court. *Id*. (Docket ## 13-15).   The court found that the Plaintiffs failed to allege that they were parties to or in privity with Fannie Mae, and thus their HAMP-related claims must be dismissed.

foreclosure mitigation options as required under HAMP guidelines..." *Id.* at \*10.  The plaintiff argued that by scheduling a foreclosure sale while the homeowner's loan modification request was pending, the servicer breached its duty to act in good faith and with reasonable diligence.  The bankruptcy court agreed relying on *Speleos*.  *Id.* at \*9 (citing *Speleos*, 2010 US Dist. LEXIS 132111 at \*6).

### 3.      Ms. Tucker has stated a claim for violation of the ECOA and VECOA.

Defendants fail to apply the most axiomatic factor in arguing a motion to dismiss; it must take the allegations in the complaint as true.  The first step in analyzing whether the Plaintiff has set forth facts that state a *prima facie* case under the ECOA is to look to the plain language of the statute itself. *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997).[4]

The statute is clear on its face.  To prevail on an ECOA claim under §1691(d), the Plaintiff must prove the following elements: (1) Defendants are creditors, (2) Plaintiff is a credit applicant, (3) Defendants took adverse action with respect to Plaintiff's credit application, and (4) failed to provide Plaintiff with an ECOA-compliant statement of reasons for its adverse action.  *Stoyanovich v. Fine Art Capital, LLC,* No. 06 Civ. 13158, 2007 WL 2363656, at \*2 (S.D.N.Y. Aug. 17, 2007) (citing *Madrigal v. Kline Oldsmobile, Inc.,* 423 F.3d 819, 822 (8th Cir.2005)); *accord Diaz v. Va. Hous. Dev. Auth.*, 117 F.Supp.2d 500, 504 (E.D. Va. 2000)(explaining that there is no Fourth Circuit authority directly on point, thus the analysis begins with the plain language of the statute, citing 15 U.S.C. §1691(d)(1)-(3); Va. Code Ann. § 59.1-21.21:1(d)(1)-(3); *see* 12 C.F.R. § 202.9(a)(1)-(2)).

---

[4] The cause of action in the Complaint is based on Defendants' failure to provide an adequate adverse action notice in violation of §1691(d) of the ECOA, which provides: (d)(1)  Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application. (2)  Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by-- (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or (B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the persons or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

Not only is the statute clear that the ECOA is violated when a creditor fails to send to a consumer adequate notice of an adverse action, it mandates that creditors notify applicants of the specific reasons the action was taken. *Id*. at 504. (citing 12 C.F.R. 202.9(a)(1)-(2), which details the two ways a creditor may discharge its duty to provide an adverse action notice to the consumer). The ECOA broadly defines "adverse action" to mean the denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or substantially the terms requested. *Id*.

The Federal Reserve Board promulgated regulations that further define "adverse action," specifically excluding certain transactions from the definition of adverse action, none of which are present in this case. *See* 12 C.F.R. 202.2(c); *see generally*, 12 C.F.R. 202.1-17 (containing Regulation B, the regulations pertaining to the duty of creditors under the ECOA and the Consumer Credit Protection Act 15 U.S.C. §1601, *et seq*.).

Section 1691(b) and Regulation B have been successfully utilized, interpreted and applied in the courts since 1976.[5]   It is inaccurate to argue that the Complaint fails to allege an adverse action where the Complaint is replete with supportable facts regarding Defendants scheme to induce the Plaintiff and other borrowers who completed applications for HAMP modifications into delinquency and default by requiring her to miss her mortgage payments.   Furthermore, Defendants unilaterally rescinded TPPs, lost borrower documentation and refused to approve the extension of credit in the form of a new loan. The Plaintiff consistently alleges facts demonstrating she submitted completed applications for which no adequate adverse action notice was provided.

When a creditor makes a decision to decline a request for credit based on information that it received through an inquiry from a prospective borrower, that inquiry constitutes an "application" for

---

[5] ECOA was enacted in 1974 and amended in 1976 to include the adverse action notice provision of § 1691(d) "as a strong, necessary adjunct to the antidiscrimination purpose of the legislation." *Williams v. MBNA Am. Bank, N.A.*, 538 F.Supp.2d 1015, (E.D. Mich. 2008)(quoting *Fischl v. Gen'l Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983).

credit for purposes of ECOA. *Stoyanovich v. Fine Art Capital, LLC,* No. 06 Civ. 13158, 2007 WL 2363656, at *5 (S.D.N.Y. Aug. 17, 2007)(quoting *Treadway v. Gateway Chevrolet Oldsmobile, Inc.,* 362 F.3d 971, 981 (7th Cir.2004) "[E]ven if it was not an application in the beginning, when [creditor] declined [applicant's] request, it became an application and creditor was required to comply with [ECOA's notice provisions].").

Although nowhere in §1691(d) is it required that a Plaintiff must allege that she is current on a mortgage in order to be entitled to the adverse action notice, the Plaintiff nonetheless alleged that she was current on her mortgage on the date she was first contacted by Defendants for a loan modification. The allegations are that to the extent Ms. Tucker was in default, it only occurred as a direct result of Defendants inducing her to do so as a prerequisite for a HAMP loan.

The main theme that permeates every fact alleged is that Defendants misrepresented the requirements for a HAMP application in order to induce the Plaintiff into defaulting on an otherwise current loan. Defendants allude to their version of the facts, which may be relevant on summary judgment or at trial. However, at this stage, Defendants must accept as true all the facts that the Plaintiff alleges and the reasonable inferences that can be drawn therefrom.

The allegations make clear that the reason for denial supplied by the Defendants was that the Plaintiff failed to submit all requested documents, which is a false reason. What Defendants' reasons were and what it did with the documents and information supplied by the Plaintiff in support of her application are facts that the Plaintiff is entitled to discover in this litigation.

A recent case in the Northern District of Illinois applied *Treadway* and further discussed this particular type of ECOA adverse action triggered by a HAMP application. *Boyd v. U.S. Bank, N.A.,* No. 1:10CV3367, 2011 WL 1374986, at *8(N.D. Ill. April 12, 2011)(finding that even a phone call suffices as a completed application under 12 C.F.R. § 202.2(f) and Supplemental Directive 09-01, at least at the motion to dismiss stage); *accord Coulibaly v. J.P. Morgan Chase Bank, N.A.,* No. DKC 10-

3517, 2011 WL 3476994, at *7-8 (D. Md. Aug. 8, 2011)(holding that simple allegations that a plaintiff applied for a loan "are sufficient at the motion to dismiss stage.").

In *Boyd*, the court's decision focused on the substance of the application process.  The method of obtaining the application was not the dispositive question but, rather, whether the information gathered by the lender was sufficient to act on the application.   In this case, it is clear that the Plaintiff provided information practically *ad infinitum*, sufficient for the lender to act on that information by, for example, approving her for a TPP and sending notices that it was refusing to modify the loan.

Despite a continuing, dynamic, virtually unending, unknowable application process, the Complaint sufficiently alleges that Plaintiff completed at least one application, that Defendants acted on the applications, thus rendering them completed applications, and therefore the Defendants were still required to send a legally compliant ECOA notice.[6]

Because default status triggers one of the exceptions to the definition of adverse action, inducing a borrower into default by falsely telling her it is a HAMP requirement must appear to lenders to be a promising way to avoid their ECOA notice duty. The possibility that Defendants might assert a defense or exemption from the ECOA's adverse action notice requirements because of alleged pre-application default is not a matter that can be resolved at this stage of the litigation or upon the face of the complaint.   "Lack of Default" is not an express element of a claim under either 15 U.S.C. §1681(d) or the VECOA, now at Va. Code. Ann. §§ 6.2-502, 503 (2010).

The Defendants argue that the Plaintiff has failed to allege an adverse action.  (Defs'

---

[6] Even if Defendants continues to assert its claim that the Plaintiff never completed an application, the ECOA requires creditors to provide consumers with written notice that their applications were incomplete and instructions on how to cure deficiencies. (Regulation B, 12 C.F.R. §202.9(a)(1)(ii), §202.9(c)(1)(i) & (ii), §202.9(c)(2)). This provision of the ECOA makes it even more clear that a creditor cannot shirk its notice responsibility by doing what Defendants did here: set up an unending cycle of requests for documentation to avoid considering a consumer's credit application to be complete, but either way failing to communicate the real reasons it is denying the loan.  The Complaint adequately sets out the facts putting the Defendants on notice that it is accused of failing to provide adequate, true and complete notices to Plaintiff, to whom it denied modifications despite compliance and completion of applications and eligibility for the HAMP program. The Complaint adequately alleges that the Plaintiff was still current on her mortgage until Defendants instructed her to default on her mortgage payments.

Mem. at 8).  One can hardly imagine a more adverse action than not only refusing to extend credit on

the terms under which she applied, but also taking steps to affirmatively deprive the Plaintiff of her

home through default, acceleration and foreclosure.  The Defendants argue that there is an exception to

the definition of adverse action where the Plaintiff was delinquent or in default at the time they applied

for the loan.  *Id*.  The Defendants cite only to an Eastern District of Michigan case, perhaps the only

case that stands for the proposition that the default status of the consumer is determined at the time the

creditor takes action rather than the consumer's status at the time of application.  (Defs' Mem. at 9,

*citing Davis v. CitiMortgage, Inc.*).  Notably, *Davis* was mentioned in this court's decision in

*Bourdelais*, but only to the extent that the court assumed (without deciding) the scenario with the most

stringent interpretation of the law regarding the exception to the adverse action notice requirement

under the ECOA and reasoned that even under that standard, it would be a fact question whether the

Plaintiff was in default at the time the lender denied the application for credit.  *Bourdelais*, 2011 WL

130631, at *5.

> **4.      Ms. Tucker has stated a claim for violation of RESPA, which does not have a heightened pleading standard.**

The Defendants have not cited a single authority from the Fourth Circuit or any district court in

this circuit to support its argument that a Plaintiff must meet a heightened pleading standard when

alleging a violation of RESPA.  There is no such authority.  Instead, the Defendants cite *Twombley* and

*Iqbal*.  The Supreme Court has specifically held that its decisions under *Twombley* and *Iqbal* do not

require heightened pleading standard, and that includes allegations that a defendant violated RESPA.

*Erickson v. Pardus,* 551 U.S. 89, 93 (2007).

In order to state a claim for violation of RESPA based on the Defendant's failure to timely

respond to a qualified written request, the Plaintiff must allege that (1) she sent a qualified written

request to the servicer of a federally related mortgage; and (2) that the servicer did not respond within

the period provided by the statute; and (3) damages.  The statute provides:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
> 12 U.S.C. § 2605(e)(1)(A).

*Carter v. Countrywide Home Loans, Inc.*, Civil No. 3:07cv651, 2008 WL 4167931, at *7 (E.D.Va. 2008).  Furthermore, the obligation of the servicer is:

> Upon receiving a "qualified written request," the statute directs a loan servicer, within 60 days, to make corrections to the borrower's account, or to conduct an investigation of the borrower's account. 12 U.S.C. § 2605(e)(2)(A)-(C). The investigation must result in a statement of the reasons for which the servicer believes the account of the borrower is correct, the production of information requested by the borrower, or an explanation of why the information requested is unavailable. *Id.* Additionally, the loan servicer must provide "the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower."
> 12 U.S.C. § 2605(e)(2)(B)(ii).

*Id.*  In this case, the Plaintiff has alleged that she sent multiple qualified written requests within the limitations period (two years prior), that the Defendants did not respond to *any* of them, and that she suffered specific damages including but not limited to damage to reputation, embarrassment, humiliation and other emotional and mental distress. These are specific facts that have been pled, and not bald assertions simply reciting the legal elements.  If the court finds that despite Rule 8's requirement for a short plain statement of the facts that entitle the plaintiff to relief, and that claim is now subject to a heightened pleading standard where the dates and the content of the QWR must be pled or attached to the Complaint, the proper ruling is to grant leave to amend the complaint, not dismissal.  *Bellamy v. Deutsche Bank Nat'l Tr. Co.,* Civil No. 2:10cv184, 2010 WL 3655642, at *2 (Aug. 9, 2010).

> **5.      Ms. Tucker's claims for non-economic damages and punitive damages are well-supported by facts alleged in the Complaint and the law.**

Plaintiff's claim of damages for emotional distress should not be dismissed because the plaintiff is not required to plead emotional distress in federal court with the degree of specificity

required under Virginia law.[7]   In federal court, the elements for a claim of emotional distress without bodily injury need not be pled to the same level of specificity but rather must only comport with the requirements of Fed. R. Civ. P. 8.  *Perk v. Worden,* 475 F. Supp. 2d 565, 571 (E.D. Va. 2007)(a reasonable jury could have found the actions met the standard and sleep disturbance and stress were adequately severe); accord, *Hatfill v. The New York Times Company*, 416 F.3d 320, 337 (4th Cir. Va. 2005)(the court found "these allegations are sufficient under Fed. R. Civ. P. 8 to give The Times 'fair notice of what [Hatfill's] claim is and the grounds upon which it rests') (quoting *Swierkiewicz*, 534 U.S. at 512, citing *Conley*, 355 U.S. at 47); *Davis v. ABM AMRO Mortgage Group*, No. 06-07126, 2007(following *Perk v. Worden* that "relatively simple allegations of severe emotional distress are sufficient.") *Davis v. ABN AMRO Mortg. Grp.,* No. 06-07126, 2007.

The Plaintiff is entitled to damages for emotional distress as contract damages, even if damages are not available for the type of contract involved, because of the nature of the breach. *Moorehead v. State Fame Fire & Cas. Co.*, 123 F.Supp2d 1004, 1006 (W.D. Va. 2000) (adopting approach of *Wise v. General Motors Corp.*, 588 F. Supp. 1207 (W.D. Va. 1984), adopting the Restatement approach that a plaintiff may recover emotional distress damages in contract actions where the claim involves bodily injury or the breach is of the type that severe emotional damage would likely result. *Restatement (Second) of Contracts* § 353).

In this case, the action for damages for emotional distress is based both upon the Defendants' breach of the implied covenant, which alleged actions constituting the breach are alleged to have been with the requisite intent to survive dismissal, and the VECOA, which damages are likewise pled. Whether the Deed of Trust is a contract associated with resulting severe emotional damage or not, a claim of damages for emotional distress will still lie as result of the *breach* of that contract.

---

[7] The elements required for a claim of damages for emotional distress with no physical injury under Virginia law is stated in *Womack v. Eldridge*. 210 S.E.2d 145, 148 (1974) (Def's Mem. at 15).   The four separate elements and supporting facts must be alleged and pled with specificity in order to establish a claim, and the pleading may not be merely conclusory. *Ely v. Whitlock*, 385 S.E.2d 893, 897 (1989); *Jordan v. Shands*, 500 S.E.2d 215, 219 (1998).

*Moorehead* at 1007 (W.D. Va. 2000).  Virginia law allows emotional distress damages in contract cases as the Restatement approach does not preclude the consideration of breach of contract as likely to afford damages at trial. *Id*.

The VECOA also provides for actual, statutory, and punitive damages along with attorneys' fees and costs.  Va. Code. Ann. § 6.2-505.  Likewise, the ECOA also provides for attorneys' fees and costs.  15 U.S.C. § 1691(e).  In addition, Virginia recognizes compensatory as well as punitive damages at common law.  *Smith v. Litten*, 507 S.E.2d 77, 80 (Va. 1998).  Where a Plaintiff pleads an intentional tort, a jury may award punitive damages.  *Id.*  In this case, the Plaintiff has pled numerous, reckless, intentional and willful acts constituting intentional torts under Virginia law and therefore she has sufficiently pled she is entitled to recover punitive damages for each claim.  *Id.*; *accord Green v. Ingram*, 608 S.E.2d 917, 923 (Va. 2005)(holding that a plaintiff is entitled to recover punitive damages where he has pled facts that the defendant had actual or constructive knowledge that the plaintiff would be harmed by the acts done or omitted).  Pointedly, it is beyond controversy that any defendant would understand that falsely telling a consumer they had to miss mortgage payments in order to qualify for a loan modification, all the while knowing that if the modification was denied the lender would initiate foreclosure, would harm the consumer. For these reasons, Ms. Tucker's claims for actual, statutory, and punitive damages as well as attorneys' fees and costs are all proper and should not be stricken or dismissed.

### 6.      Ms. Tucker is entitled to injunctive relief.

Rule 65 of the Federal Rules of Civil Procedure permits a court to issue a preliminary injunction. Such an order may be issued by a court with or without notice to the non-moving party. In this case, the Plaintiff has attempted to provide notice to the Defendants.  This motion has been sent to the Defendants as described in the Certificate of Service.

"[T]he purpose of a preliminary injunction is to preserve the status quo." *Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules,* 837 F.2d 171, 173 (4th Cir. Va. 1988) (quoting *University of Texas*

26

*v. Camenisch*, 451 U.S. 390, 395, (1981)); *see also Bryson on Virginia Civil Procedure* § 7.05. Virginia Code mandates that "[n]o temporary injunction shall be awarded unless the court shall be satisfied of the plaintiff's equity."  Va. Code Ann. § 8.01-628.

A plaintiff seeking a preliminary injunction must establish all four of the following elements: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F. 3d 342, 346-47 (4th Cir. 2009), vacated on other grounds by 130 S. Ct. 2371, and reissued in part by 607 F.3d 355 (4th Cir. 2010)), overruling *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). In this case, there is no doubt that Ms. Tucker can establish all four elements required for injunctive relief to issue under the law articulated the United States Supreme Court in *Winter* and the Virginia Supreme Court in *Mathews*.

In this case, Ms. Tucker seeks a court order (1) enjoining the Defendants from foreclosing on the Plaintiff's property and engaging in further activity that harms the Plaintiff; (2) requiring that the Defendants adopt and implement policies and procedures that train their employees so that this type of wrong does not happen to other consumers; (3) that Defendants provide an accounting of the mortgage; and (4) requiring Defendants to produce the note or other proof of actions to obtain the original note. *Mathews v. PHH Mortgage Corp.*, 724 S.E.2d 196, at n.1 (relying on *Bayview Loan Serv'g, LLC v. Simmons,* 654 S.E.2d 898 (Va. 2008), "for the principle that damages may be awarded at law after a foreclosure sale has been conducted improperly because the power of foreclosure has not accrued. Equitable relief is available to enjoin the improper sale before it occurs as well.")

As to the first element, the Plaintiff has adequately alleged that Defendants have no present right to foreclose because of its bad faith in inducing the Plaintiff into applying for a loan modification while its plan was to foreclose, where the Plaintiff would be in no danger of default or foreclosure but

27

for the Defendants' actions.  Furthermore, Defendants do not have the proper authority to foreclose based on the appointment of substitute trustee.   The Plaintiff is entitled to an injunction prohibiting the Defendants from any further foreclosure threats until the merits of this case are resolved.

The second element for a preliminary injunction is whether the plaintiff is likely to suffer irreparable harm unless the injunction is granted. *Winter*, 555 U.S. at 20.  The term "irreparable injury" does not mean that there must be no physical possibility of repairing the injury; all that is meant is that the injury be a grievous one, or at least a material one, and not adequately reparable in money damages. *See, e.g., Callaway v. Webster*, 98 Va. 790 (1900).

"There is substantial support in Virginia for the proposition that irreparable harm is sustained, and injunctive relief is appropriate, when it would be very difficult or impossible to quantify monetary damages with precision." *Re: HotJobs.com, Ltd. v. Digital City, Inc.*, 53 Va. Cir. 36, 45 (Fairfax Cir. Ct. 2000) (*citing Black & White Cars, Inc. v. Groome Transportation*, 247 Va. 426 (1994) (holding that an injunction was appropriate, in part, because of the difficulty of ascertaining with precision the monetary damages suffered). In this case, Ms. Tucker will suffer a harm that cannot be adequately redressed by money damages if she is ousted from her home.  This court has explained:

> It is because damages are incalculable and not susceptible of proof that irreparable injury is shown. *See, e.g., Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,* 22 F.3d 546, 551 (4th Cir.1994) ("irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate"); *Phillips v. Crown Central Petroleum Corp.,* 602 F.2d 616, 629 (4th Cir.1979), *cert. denied,* 444 U.S. 1074, (1980) ("a future injury of uncertain date and incalculable magnitude is irreparable harm, and protection from such an injury is a legitimate end of injunctive relief").

*Cornwell v. Sachs*, 99 F. Supp. 2d 695, 707 (E.D. Va. 2000).  Not only are the non-economic harms severe, Ms. Tucker has equity in her home.  A foreclosure prevents her from taking other action to minimize her losses such as selling her home if a modification is truly impossible.  Additionally, once a home is in foreclosure and the owners are ousted, the property no longer has its caretakers living on the premises, exposing it to diminution in value. Courts have held that because real property

is unique, its loss causes an irreparable injury.  *United Church of the Med. Ctr. v. Med. Ctr. Comm'n,*
689 F.2d 693, 701 (7th Cir. 1982)(explaining that "it is settled beyond the need for citation . . . that a
given piece of property is considered unique, and its loss is always an irreparable injury."); *accord,*
*McKenzie v. City of Chicago*, 964 F.Supp. 1183, 1204 (N.D. Ill. 1997)(holding that legal remedies are
insufficient to compensate for the loss of real property).

The balance of hardships tips in favor of the Plaintiff.  If an injunction is granted, the Plaintiff
continues to stay in her home pending the outcome of this federal lawsuit without the stress and
hardship of defending a foreclosure action.  Maintaining the status quo will mean that Ms. Tucker will
not have to uproot herself and her belongings in search of new accommodations. She will not be forced
to enter into new leases or encumbrances, and suffer the humiliation and inconvenience of being
ousted from her home, when it is clear that she will prevail on at least one of her claims:  that the
Defendants do not have the right to foreclose. *Mathews*, 724 S.E.2d 196.

Defendants will likewise retain their relative positions. In the event they prevail against the
Plaintiff, they have not foregone anything except money, which can be collected in a foreclosure sale
and subsequent collection action. Granting a preliminary injunction now will also conserve judicial
resources, attorney time and inconvenience to the parties to have contested issues resolved.
Maintaining the status quo will also mitigate the losses to both sides of the controversy by reducing
both the economic and non-economic harm that a foreclosure visits on consumers and reducing the
amount of damages for which the Defendants will ultimately be liable.

There is a public interest in promoting enforcement of a contract and the payment of debts.
This is not a case where one party is seeking to enforce the breach of a simple contract and collection
of a known debt.  The contract in question is a Deed of Trust that incorporates meaningful, serious and
mandatory conditions precedent before foreclosure may commence. As one court explained,
"[a]lthough the public interest does support the payment of debts, the court finds that it weighs more in
favor of protecting people who are threatened with eviction as a result of potentially unlawful

29

transactions." *Hruby v. Larsen*, 2005 WL 1540130, at *5 (D. Minn. 2005).   The Plaintiff's interest is

squarely aligned with the public interest to maintain the status quo, to prevent a wrongful foreclosure,

and to have the matter in controversy resolved by the court.

**III.    Conclusion**

For the reasons stated herein, the Plaintiff respectfully requests that the Court deny

Defendants' Motion to Dismiss in totality.   In the alternative, Plaintiff respectfully requests that the

Court grant her leave to amend her Complaint.

SEBRENA Y. TUCKER

_____/s/_____

Gary L. Abbott, VSB #68829
Attorney for Sebrena Y. Tucker
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
garyabbott9@msn.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of October 2012, I will electronically file the foregoing
with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing
(NEF) to the following:

Hunter W. Sims, Jr.
Christy L. Murphy
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169

_____/s/_____

Gary L. Abbott, VSB #68829
Attorney for Sebrena Y. Tucker
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
garyabbott9@msn.com